**Frank NEELY, Jr. and Barbara Neely**

v.

**GENERAL ELECTRIC COMPANY.**

Civ. A. No. C80–44N.

United States District Court,
N. D. Georgia,
Newnan Division.

June 29, 1981.

Wood & Odom, Newnan, Ga., Freeman & Hawkins, Atlanta, Ga., for plaintiffs.

Carter, Ansley, Smith & McLendon, Atlanta, Ga., for defendant.

## ORDER

TIDWELL, District Judge.

The above-styled matter is presently before the court on the defendant's motion to reduce the verdict and the defendant's motion to retax cost. The facts of the case are as follows. On September 27, 1979, the plaintiff Mr. Frank Neely, Jr. delivered a regulator to General Electric Company for repair. In the course of delivery, Mr. Neely entered the General Electric Company Building to unload the regulator from the truck. After parking the vehicle in a position for unloading, the plaintiff climbed into the rear of the truck and proceeded to attach a hoist to the regulator. As the plaintiff hooked the hoist cable to the regulator, the steel lifting block attached to the hoist fell and injured him. The plaintiff Frank Neely, Jr. and Barbara Neely subsequently filed this suit in part against the defendant General Electric Company for failure to exercise due care and caution for the safety of the plaintiff and for failure to properly operate, repair and maintain the crane which caused injury to the plaintiff. Upon the trial of the matter, the jury entered a verdict of Three Hundred Twenty Thousand Dollars ($320,000.00) for the plaintiff Frank Neely and Twelve Thousand Five Hundred Dollars ($12,500.00) for the plaintiff Barbara Neely. The defendant now files a motion to reduce the verdict for Frank Neely and a motion to retax cost.

With respect to the motion to reduce the verdict, the defendant contends that the plaintiff Frank Neely qualifies as an "insured" under the Georgia Motor Vehicle Accident Reparations Act, *Ga.Code Ann.* § 56–3403b(b), and as an "insured" who is eligible for economic loss benefits, the plaintiff is, therefore, precluded from recovering from the defendant the amount of

damages for which compensation as economic loss is available pursuant to *Ga.Code Ann.* § 56–3410b(b). Accordingly, the defendant requests that the court reduce the amount of the verdict for the plaintiff Frank Neely in the amount of Five Thousand Dollars ($5,000.00) which constitutes the minimum coverage required by the Act. In opposition, the plaintiff concedes that he qualifies as an "insured" but contends that he is not eligible to recover under the Act since his injury did not constitute "accidental bodily injury" as specified under *Ga. Code Ann.* § 56–3407b(b). The sole question before this court, therefore, is whether coverage of the plaintiff Frank Neely's injury exists under the Georgia Motor Vehicle Accident Reparations Act.

*Ga.Code Ann.* § 56–3407b(b) requires coverage for the "accidental bodily injury" sustained by the insured while "occupying" a motor vehicle. "Accidental bodily injury" is in turn defined as "bodily injury . . . arising out of the operation, maintenance or use of a motor vehicle which is accidental as to the person claiming basic no-fault benefits. . . ." *Ga.Code Ann.* § 3402b(c). The Code further defines the "operation, maintenance or use of a motor vehicle" as the operation, maintenance and use of a motor vehicle as a vehicle but excludes conduct in the course of loading and unloading the vehicle *unless* the conduct occurs while occupying it. *Ga.Code Ann.* § 56–3402b(h) (emphasis added). "Occupying" means to be in or upon a motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle. *Ga.Code Ann.* § 56–3402b(i).

■ In the present case, the plaintiff sustained his injury while standing in the rear of his truck. Therefore, during his efforts to unload the regulator, the plaintiff was clearly "occupying" the truck and was not excluded from coverage by the unloading exception to the definition of "operation, maintenance or use". Furthermore, the legislature having explicitly addressed the type of unloading activity to be excluded from coverage by the Act, it is only logical to conclude that any act of loading a vehicle

while "occupying" it would fall within the scope of the phrase "operation, maintenance or use" of a vehicle. Having been injured in the "operation, maintenance or use" of the truck, the plaintiff's injury satisfies the definition of "accidental bodily injury" and the plaintiff was eligible to recover under the Act. The court, therefore, grants the defendant's motion to reduce the verdict by the amount of Five Thousand Dollars ($5,000.00), reducing the judgment of the plaintiff Frank Neely to Three Hundred Fifteen Thousand Dollars ($315,000.00).

■ The defendant has also filed a motion to retax cost. The plaintiffs submitted a bill of costs to the clerk of the court on February 24, 1981 and notice of the filing was received by the defendant on February 25, 1981. On March 2, 1981, the clerk of the court taxed the defendant with cost in the amount requested. According to the defendant, no notice of the taxation of cost was received from the clerk and the defendant's counsel first learned of the taxation on March 26, 1981. The defendant filed this motion to retax cost on March 30, 1981. Although this motion to retax cost was not filed within five days of the taxation of cost as required by Rule 54(d), Federal Rules of Civil Procedure, the court will consider the motion as timely in light of the defendant's lack of notice.

■ Initially, the defendant challenges the plaintiffs' attempt to tax the cost of expert witness fees for seven doctors amounting to a total of One Thousand Three Hundred Nineteen and 66/100 Dollars ($1,319.66). The defendant's objection is well taken. The Fifth Circuit has repeatedly held that statutory fees provided in 28 U.S.C. § 1821 are exclusive, and a district court has no authority to tax costs for compensation to expert witnesses in excess of the statutory per diem, mileage and subsistence allowance where appropriate. *Jones v. Diamond,* 594 F.2d 997 (5th Cir. 1979); *Baum v. United States,* 432 F.2d 85 (5th Cir. 1970). The plaintiffs have submitted that should the court rule that the doctors' fees are not taxable in the amount of an expert witness fee, the plaintiff is entitled to the

regular statutory fee under § 1821 which plaintiff calculates to be Eighty Dollars ($80.00) in total for the seven doctors. The court finds that the plaintiffs are entitled to the Eighty Dollars ($80.00) in witness fees for the doctors' deposition testimony. The defendant also challenges the plaintiffs' attempt to tax the witness fee of Francis Ranwez totalling Two Thousand Eight Hundred Twenty-One Dollars ($2,821.00) as exceeding the statutory limit for compensating a regular witness under § 1821. Under § 1821, the plaintiffs are limited to recovering cost in the amount of Thirty Dollars ($30.00) per attendance by the witness, and finding that Mr. Ranwez made one appearance only, the court reduces the award of cost for the witness fee of Francis Ranwez to Thirty Dollars ($30.00).

■ The defendant has also challenged the plaintiffs' attempt to tax the reporter's cost with regard to a number of depositions. The cost of reporter's fees is taxable when necessarily obtained for use in the case. 28 U.S.C. § 1920. In order to be considered necessarily obtained for use in the case, the deposition need not be used in the actual trial. *Dasher v. Mutual Life Insurance Company of New York*, 78 F.R.D. 142 (N.D. Miss.1974). The question is essentially whether the taking of the deposition was reasonably necessary in light of the particular situation existing at the time of taking. *Nationwide Auto Appraiser Service, Inc. v. Association of Casualty & Surety Companies*, 41 F.R.D. 76 (W.D.Okl.1966). The defendant does not contest the taxation of the cost of the doctors' depositions since each deposition was used in trial, but does object to the taxation of the remaining depositions which were not used in trial. In response, the plaintiffs specifically refer to the depositions of Christopher, Dillon, Foxworth & Bauer, contending that these individuals were and are employees of Kranco which was a co-defendant in the present case at the time the depositions were taken. As employees of the co-defendant and being beyond the subpoena power of the court, the plaintiff found it necessary to take their deposition. Finding the depositions of

these individuals to have been obtained necessarily for use in the case, the court allows the taxation of cost. With respect to the remaining depositions, the plaintiff has failed to offer the court any explanation of why the depositions should be considered necessarily obtained for use in the case. Since such information is peculiarly within the knowledge of the prevailing party and the court in the instant case is unable to discern the plaintiffs' reasons for obtaining the deposition of its own knowledge, the court reduces the amount taxed for reporter cost by Seven Hundred Eighty-Five and $^{72}/_{100}$ Dollars ($785.72), yielding a final taxation of cost for the depositions of One Thousand Five Hundred Eighty-Five and $^{13}/_{100}$ Dollars ($1,585.13).

■ The defendant also objects to the plaintiffs' inclusion in the Bill of Cost of the travel expenses of the attorney incurred in the course of taking the deposition of Kranco's employees. Ordinarily, travel expenses of counsel in attending a deposition are not taxed as cost. *Wahl v. Carrier Manufacturing Co., Inc.*, 511 F.2d 209 (7th Cir. 1975); *Frigiquip Corporation v. Parker-Hannifin Corporation*, 75 F.R.D. 605 (W.D.Okl.1976). Courts have recognized, though, that the taxation of travel expenses as cost may be appropriate in extraordinary and compelling circumstances. *Kaiser v. Industries Corporation v. McLouth Steel Corporation*, 50 F.R.D. 5 (E.D.Mich.1970). In the present case, the court finds no extraordinary and compelling circumstances to justify the allowance of travel expenses as cost and denies the plaintiffs' request for travel expenses as a part of cost.

■ Finally, the defendant argues that the plaintiff should not be allowed to tax the cost of medical reports none of which were admitted into evidence. The court notes initially that one report from the Shallowford Hospital was admitted into evidence and is obviously taxable as cost. However, even where reports were not admitted into evidence, the court may tax the reports as cost where they are necessarily obtained for use in the case. 28 U.S.C.

§ 1920(4). In this instance, the plaintiff obtained the reports for responding to interrogatories and conducting the doctors' depositions which were ultimately used in trial. Accordingly, the court finds that the reports were obtained necessarily for use in the case and allows them as cost.

## SUMMARY

The court grants the defendant's motion to reduce the verdict of Frank Neely in the amount of Five Thousand Dollars ($5,000.00), yielding a final verdict of Three Hundred Fifteen Thousand Dollars ($315,-000.00). The court also grants the defendant's motion to retax cost and directs the clerk to tax cost against the defendant in the following amount:

```
FEES OF CLERK                  $    60.00

FEES OF MARSHAL                     10.72

FEES OF THE COURT REPORTERS

    Dr. Holmes                      75.10
    Drs. Haber and Davis           339.20
    Dr. Moore                      102.53
    Dr. Eisenband                   75.10
    Dr. Koffman                     97.70
    Christopher, Dillon,
      Foxworth & Bauer             895.50

WITNESS FEES

    Doctors                         80.00
    Francis Ranwez                  30.00
    Mr. Reich                       54.80
    Mr. Russell                     60.40

MEDICAL REPORTS                    307.00

PHOTOGRAPHS                        102.44

TOTAL                         $2,290.49
```