Lisamarie DeSHIRO and Karen Landon, Plaintiffs,

v.

David BRANCH, individually; Edward Glen McCabe, individually and Paramount Payphone, Inc., a Nevada Corporation, d/b/a/ PPI Payphones, Inc., a Nevada Corporation, Defendants.

No. 96–800–Civ–T–17E.

United States District Court, M.D. Florida, Tampa Division

Nov. 2, 1998.

Howard J. Shifke, Howard J. Shifke, P.A., Tampa, FL, for Lisamarie DeShiro and Karen Landon.

Michele M. Perri, Law Office of Harry W. Haskins, Sarasota, FL, Albert J. Ferrera, Kunkel Miller & Hament, Sarasota, FL, for David Branch.

Albert J. Ferrera, Kunkel Miller & Hament, Sarasota, FL, for Edward Glen McCabe.

### *ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS*

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant's Amended Motion for Order Awarding Attorney's Fees, (Docket No. 113) Defendant's Motion for Rule 11 Sanctions, (Docket No. 114) and responses.

### BACKGROUND

The plaintiffs, LisaMarie DeShiro (hereinafter DeSHIRO), Karen Landon (hereinafter LANDON), and Brenda Lee Meigs (hereinafter MEIGS) are all women residing in Sarasota County, Florida. The defendant, Paramount Payphones, Inc. (hereinafter PARAMOUNT), is a Nevada Corporation doing business in Sarasota, Sarasota County,

Florida. The other two defendants, David Branch (hereinafter BRANCH), and Edward Glen McCabe (hereinafter McCABE), were employed by PARAMOUNT as business executives who were empowered to make final corporate decisions regarding employment.

At various times throughout 1995, DeSHIRO, LANDON, and MEIGS were all hired and retained as employees by PARAMOUNT. Throughout the tenure of their employment, DeSHIRO, LANDON, and MEIGS alleged that BRANCH and McCABE subjected them to sexual harassment in the form of unwanted sexual comments, sexual innuendo, and physical touching and groping.[1] They further alleged that BRANCH and McCABE overtly asked them to engage in sexual activity in exchange for monetary compensation. Such conditions, they alleged, caused an intimidating, hostile, and offensive work environment. DeSHIRO, LANDON, and MEIGS further assert that they were terminated from PARAMOUNT as a result of their refusal to engage in these sexual activities with BRANCH and McCABE.

In April, 1996, DeSHIRO, LANDON, and MEIGS filed their Second Amended Complaint in this case. The Complaint, consisting of five counts total, alleged the following: Intentional Infliction of Emotional Distress (Count I), Battery (Count II), Quid Pro Quo Sexual Harassment (Count III), Hostile Work Environment Sexual Harassment (Count IV), and a violation of the Florida Civil Rights Act of 1992 (Count V). Counts II and III were filed under the Civil Rights Act of 1964.

Approximately fifteen (15) months after the complaint was filed, and subsequent to the parties engaging in discovery, PARAMOUNT filed a Motion for Partial Summary Judgment as to Counts III, IV, and V of the Complaint. This Court granted the motion on the basis that DeSHIRO, LANDON, and MEIGS were unable to meet their burden of proving that this Court had subject matter jurisdiction.

Shortly after this Court granted PARAMOUNT's Motion for Partial Summary Judgement, this Court was presented with a Joint Stipulation of Voluntary Dismissal, without prejudice, for the remaining claims, Counts I and II. This Court granted the Joint Stipulation of Voluntary Dismissal. A few days later, PARAMOUNT filed the Motion for Attorney's Fees followed by the Motion for Rule 11 Sanctions.

## DISCUSSION

### I. ATTORNEY'S FEES

Title VII of the Civil Rights Act of 1964 provides for the award of attorney's fees to the prevailing party. *See* 42 U.S.C. § 2000e–5(k). Section 706(k) provides, in pertinent part:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person. 42 U.S.C. § 2000e–5(k).

The Congressional purpose of this provision awarding fees to the *prevailing* party is twofold. First, and seemingly foremost, the provision was designed to enable and to encourage plaintiffs to pursue meritorious claims. *See Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 412–13, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Congress also intended the provision, as its application might entail the award of such fees to a defendant, as a means to discourage frivolous, groundless, or unreasonable suits. *See id.* However, it is important to note that "policy concerns militate against awarding attorney's fees to defendant's in civil rights cases because such practice may discourage plaintiff's from bringing civil rights lawsuits." *Sayers v. Stewart Sleep Ctr.,* 140 F.3d 1351,

---

1. Notably, MEIGS voluntarily withdrew from this suit, confessed to perjury, and contended that the other two plaintiffs were fabricating their allegations. There is some dispute between the parties as to the ethical implications regarding the circumstances under which MEIGS recanted her story. Nonetheless, this type of ammunition was prime fodder for defendant's Motion for Rule 11 Sanctions.

1353 (11th Cir.1998); *see Sullivan v. School Bd. of Pinellas County,* 773 F.2d 1182 (11th Cir.1985) (citing a list of factors that should guide a district court's decision into whether an offending party's case meets the Christiansburg criteria); *Eichman v. Linden & Sons, Inc.,* 752 F.2d 1246 (7th Cir.1985) (partaking in a thorough discussion of the equitable considerations inherent in awarding fees to Title VII plaintiffs and noting that such considerations are absent in the case of a prevailing Title VII defendant).

Nonetheless, as this suit alleges claims arising under the Civil Rights Act, this Court has discretion to award attorney's fees to the prevailing party, pursuant to *Fed.R.Civ.P.* 54 and Local Rule 4.18. In deciding whether attorney's fees are warranted in this case, it is necessary to inquire into the following: (1) whether PARAMOUNT's motion for attorney's fees adheres to the requirements set forth in *Fed.R.Civ.P.* 54(d) and Local Rule 4.18, (2) whether the facts and disposition of the claims in this case allow for PARAMOUNT, as defendant, to qualify as a prevailing party, and (3), provided such an analysis is necessary, whether the suit filed by DeSHIRO, LANDON, and MEIGS is frivolous, unreasonable, or meritless.

### A. The Motion Itself.

■ In surveying the arguments proffered by both the plaintiffs and the defendant, there seems to be some confusion as to which judgment of this Court triggered the 14–day statutory period under which the prevailing party may file a Rule 54(d) motion for attorney's fees. In this case, this Court granted Defendant's Motion for Partial Summary Judgment as to Counts III, IV, and V of the suit on April 20, 1998. Such a judgment is interlocutory in nature and generally not appealable unless it constitutes the final order in the case. *See* 10 *Moore's Federal Practice* § 56.40[3] (Matthew Bender 3d ed.1997).

Rule 54(b) of the Federal Rules of Civil Procedure instructs that, in order for the Order Granting Partial Summary Judgment to have triggered the 14–day period, this Court would have had to "direct the entry of a final judgment as to one or more but fewer than all the claims ... [and must have done

so in the form of] an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." *Fed.R.Civ.P.* 54(b). No such Rule 54(b) certification was ordered in this case. Thus, it was appropriate and permissible for PARAMOUNT to have waited to file the motion for attorney's fees until after all the claims had been adjudicated.

Furthermore, because Rule 54(b) is invoked by the *prevailing* party and because the rule requires the motion for attorney's fees to contain an amount or a fair estimate of the amount sought, it is then seemingly necessary to adjudicate all the claims in order to determine *which* party prevails and what *amount* of attorney's fees will be incorporated into the motion. Accordingly, the Order granting the Joint Stipulation of Voluntary Dismissal, disposing of claims I and II, filed on May 20, 1998, constituted the final order in the case upon which a determination of which party is the prevailing party and an amount of attorney's fees can be made. PARAMOUNT's Motion for Attorney's Fees was filed on May 28, 1998. Therefore, PARAMOUNT's Motion for Attorney's Fees is timely.

■ That being said, it is important to note that the defendant filed a Motion for Order Awarding Attorney's Fees on May 22, 1998. That motion was denied by this Court for failing to comply with Local Rule 3.01(g). The defendant subsequently filed an amended motion on June 1, 1998. However, the amended motion, the motion before this Court today, again fails to comply with the statutory requirements—this time, it fails to comply with the requirements set forth in *Fed.R.Civ.P.* 54(d)(2)(B). The statute reads, in pertinent part, "the motion must be filed and served no later than 14 days after entry of judgment; must specify the judgment and the statute ... *and must state the amount or provide a fair estimate of the amount sought.*" *Fed.R.Civ.P.* 54(d)(2)(B). Even though the plain language of the statute seems unambiguous and rather straightforward, PARAMOUNT failed to state any amount or *any* estimate thereof within the Amended Motion.

It is true that the Advisory Committee Notes proclaim that a motion for attorney's fees does not have to be supported by evidentiary material at the time of filing. *See* Advisory Committee Notes to 1993 Amendments *Fed.R.Civ.P.* 54(d). However, PARAMOUNT asserts this proposition as if this Advisory Committee Note language negates or subtracts from the plain wording of the statute. It does not. The Advisory Committee Notes are complimentary and explanatory. The statute makes clear that the amount or an estimation of an amount *must* be stated. PARAMOUNT failed to do so.

However, rather than premise the denial of PARAMOUNT's motion upon the flagrant omission of the amount of attorney's fees requested, this Court is willing to use its inherent discretion to overlook this deficiency.[2] The Eleventh Circuit has a "strong policy of resolving issues on the merits, rather than on procedural[3] technicalities." *See Whitehead v. School Bd. of Hillsborough County,* 932 F.Supp. 1396, 1398 (M.D.Fla. 1996). Thus, this Court will give weight and consideration to PARAMOUNT's contention that it did, in fact, comply with the underlying purpose of the statute by informing De-SHIRO, LANDON, and MEIGS of the *amount,* not in the Motion for Attorney's Fees, but in another piece of correspondence to plaintiffs, one which reached them around the time the attorney fee's' motion was filed with this Court.

### B. Threshold Question: Is Defendant A Prevailing Party?

Perhaps overlooked, the various motions filed in an attempt to secure attorney's fees and the subsequent responsive motions filed to prevent such an award, failed to argue that the defendant qualified as a prevailing party. However, this is a threshold question that must be addressed and satisfied before this Court can inquire as to whether the Plaintiff's suit was frivolous, unreasonable, or groundless.

It is axiomatic that there must be a judicial determination on the merits in order for there to be a *prevailing* party. *See Marquart v. Lodge 837, Int'l Assoc. of Machinists and Aerospace Workers,* 26 F.3d 842 (8th Cir.1994) (engaging in a detailed and very thorough discussion of the matter and concluding that, in order to be a prevailing party, a defendant must point to a judicial declaration to its benefit); *Keene Corp. v. Cass,* 908 F.2d 293 (8th Cir.1990); *Coates v. Bechtel,* 811 F.2d 1045 (7th Cir.1987). Although in the context of a § 1988 civil rights case, the Supreme Court has stated that to qualify as a prevailing party requires that "[o]ne must have prevailed on the *merits* of at least some of his claims, for only in the event that there has been a determination of the 'substantial rights' of the parties' will there be a deviation from the general rule[4] in this country that each party is to bear his own attorney's fees." *Hanrahan v. Hampton,* 446 U.S. 754, 756–57, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Likewise, this Court sees no reason why the same does not hold true under a similar attorney fee provision incorporated into another civil rights statute, Title VII.

Examining the particulars of this case, Counts III, IV, and V were disposed of on this Court's Order Granting Defendant's Motion for Partial Summary Judgment (Docket No. 103). This Court granted the motion on the basis that DeSHIRO, LANDON, and MEIGS were unable to meet their burden of proving that this Court has subject matter jurisdiction. Specifically, DeSHIRO, LANDON, and MEIGS were unable to prove that PARAMOUNT retained at least 15 or more employees in each of 20 or more calen-

---

2. This Court's decision to overlook PARAMOUNT's failure to comply with the statutory requirements of Rule 54(d)(2)(B) is in no way meant to encourage or even excuse noncompliance with the Federal Rules of Civil Procedure or any of the local rules.

3. The omission of the amount of attorney's fees in this case is really not a procedural technicality; however, in the spirit of this Circuit's policy of finality and resolving issues on the merits, this Court finds the omission of the amount to be inconsequential in this case.

4. This is known as the "American Rule." *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (discussing the statutory and contractual rights necessary to receive attorney's fees).

dar weeks, thereby making it statutorily impossible to classify PARAMOUNT as an "employer" under Title VII of the Civil Rights Act.

Several courts have held that a defendant cannot be a *prevailing* party when the complaint is dismissed or disposed of for lack of jurisdiction, subject matter or otherwise. *See Daugherty v. Westminster Schools, Inc.,* 174 F.R.D. 118, 120–22 (N.D.Ga.1997); *Sellers v. Local 1598,* 614 F.Supp. 141, 143 (E.D.Pa.1985). These courts premise this proposition on the rationale that a "defendant cannot be said to have 'prevailed' on an issue which evaporated prior to the court addressing it." 614 F.Supp. at 143. Likewise, *in Hidahl v. Gilpin County Department of Social Services,* 699 F.Supp. 846, 849 (D.Colo.1988) the court held that Gilpin County Department was not a "prevailing party" for purposes of the civil rights attorney fee statute because the action was dismissed for lack of subject matter jurisdiction. Similarly, in the case before us today, defendant PARAMOUNT did not prevail on the merits of any claim. Rather, Counts III, IV, and V of the suit were dismissed for lack of subject matter jurisdiction before this Court addressed those claims on their merits. And Counts IV and V were voluntarily dismissed pursuant to *Fed.R.Civ.P.* 41(a)(1); thus, the Court did not have the opportunity to address the merits of those claims either.

Furthermore, there are a host of other cases holding that cases or claims which are disposed of on a voluntary dismissal basis, without prejudice, also does not equate to an adjudication of the case on the merits. *See, e.g., Szabo Food Serv. v. Canteen Corp.,* 823 F.2d 1073 (1987); *Fernandez v. Southside Hospital,* 593 F.Supp. 840 (E.D.N.Y.1984) (declaring it is well settled that a voluntary dismissal without prejudice leaves the situation as if the action [individual claims] had never been filed).

Consequently, whether it is the disposition of a plaintiff's claim under voluntary dismissal or the disposition of a plaintiff's claim for lack of subject matter jurisdiction, the defendant cannot then be said to have "prevailed" if any of the claims that are being defended have met that fate. Because all five claims in this suit were disposed of in either of the aforementioned manners, PARAMOUNT cannot be labeled a "prevailing party." Consequently, because 42 U.S.C. § 2000e–5(k) grants this Court discretion to award fees to the *prevailing* party, PARAMOUNT cannot and is not entitled to attorney's fees.

## C. Notwithstanding B, was Plaintiff's Suit Frivolous?

There are still other grounds whereby this Court could deny PARAMOUNT's Motion for Attorney's Fees. For example, several courts have held that where a governmental investigative agency, such as the EEOC, has issued a determination that probable cause exists, such that it issues a right-to-sue letter, then such involvement by the EEOC lends a great deal of credibility to the finding that the suit is reasonable and grounded. *See Christiansburg,* 434 U.S. at 415, 98 S.Ct. 694 (finding that since the EEOC is an expert in the investigation of such claims, then it cannot be quickly deduced that there was "no legal or factual basis" for the suit); *Mitchell v. Office of Los Angeles County Superintendent of Schs.,* 805 F.2d 844 (9th Cir.1986) (noting that a plaintiff receiving such a letter from the EEOC "would reasonably believe that there was an adequate basis in law and facts to pursue his claim"). Given the involvement of the EEOC and the issuance of a right-to-sue letter in this case, it is likely that plaintiff's suit would not be found to be frivolous for the purpose of attorney's fees.

## SUMMARY

In terms of the more typical analysis of whether the plaintiff's claims set forth in this suit qualify as frivolous or meritless, this Court does not need to conduct such an inquiry. As this Court also concludes in the second half of this Order, there are deficiencies elsewhere in PARAMOUNT's motions that prevent this Court from reaching that stage of the analysis. In sum, this Court is denying PARAMOUNT's Motion for Attorney's Fees due to the finding that the disposition of the claims in this case does not allow for the defendant, PARAMOUNT, to be considered a prevailing party.

## II. SANCTIONS

Several factors are examined when a court must entertain a Motion for Rule 11 Sanctions. *See, e.g., Smith Int'l, Inc., v. Texas Commerce Bank,* 844 F.2d 1193 (5th Cir. 1988); *Gaiardo v. Ethyl Corp.,* 835 F.2d 479 (3rd Cir.1987). Related to the case before us today, to determine if sanctions are appropriate, this Court must consider: (1) the Congressional policies underlying the "safe harbor" provision of Rule 11, (2) whether the serving and filing of PARAMOUNT's motion was consistent and in line with such policies, and (3), provided PARAMOUNT survives the above prongs, whether the action brought by DeSHIRO, LANDON, and MEIGS warrants the need for sanctions in order to deter such future actions.

### A. 1993 Amendments: Safe Harbor Provision

■ The 1993 amendments to Rule 11 radically altered the structure of Rule 11. The primary alteration, and the one for which the 1993 amendments are most often cited, was the addition of the twenty-one (21) day "safe harbor" period. This provision dictates that a party serving a motion for sanctions must first serve such a motion upon the offending party, and shall not file the motion with the court until 21 days after the motion is served on the offending party. *See Fed.R.Civ.P.* 11(c)(1)(A). This 21–day window gives the offending party time to correct the offending paper, claim, defense, or contention by either withdrawing or "appropriately correcting" the offending document. *See id.* The Advisory Committee Notes offer rationale for this "safe harbor" provision:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule,

parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.[5]

For this Court's purposes today, highlighting yet another of the Advisory Committee Notes lends ample support for our holding. It states "[o]rdinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely ... Given the "safe harbor" provisions ... a party cannot delay its Rule 11 motion until conclusion of the case." *See* Advisory Committee Notes to 1993 Amendments, *Fed.R.Civ.P.* 11. Unfortunately, this is precisely the problem with PARAMOUNT's motion. The service and filing of PARAMOUNT's motion failed to adhere to the underlying policy supporting the "safe harbor" provision.

### B. Did Motion Comply with Safe Harbor Provision?

In a letter dated May 27, 1998, PARAMOUNT notified DeSHIRO, LANDON, and MEIGS of their intent to file Rule 11 sanctions. The letter notified the plaintiffs that they had 21 days to "appropriately correct" the situation by forwarding a check in the amount of $215,676.97. Additionally, PARAMOUNT's proposed Motion for Rule 11 Sanctions was served on DeSHIRO, LANDON, and MEIGS on May 28, 1998. However, Counts III, IV, and V of the suit were disposed of on PARAMOUNT's own motion for Partial Summary Judgment. This Partial Summary Judgment motion was granted on April 20, 1998. And, because it is generally accepted that the month of April precedes the month of May, PARAMOUNT's Motion for Rule 11 Sanctions fails to adequately warn the plaintiffs, such that they could have an opportunity to "appropriately correct" the situation.

Even more damaging to PARAMOUNT is the fact that Counts II, IV, and V of the suit

---

5. It is interesting to note that the Advisory Committee *"substantially* relied on the safe harbor provision in responding to criticisms of Rule 11 ..." Carl Tobias, *The 1993 Revision of Federal Rule 11,* 70 *Ind.L.J.* 171, 207 (1994). This shows that the Advisory Committee affords great weight to the safe harbor provision of Rule 11.

were the sexual harassment counts, the claims PARAMOUNT contends were so frivolous and fraudulent. Why then, would PARAMOUNT wait until *after* these claims were disposed of to notify the plaintiffs of its intent to file a motion for sanctions? This delay of waiting until *after* Counts III, IV, and V were already disposed of obviously undermines and attempts to circumvent the statutory purpose now inherent in the Rule 11 sanction process. In fact, in this Court's opinion, such actions on behalf of PARAMOUNT almost qualify, in and of themselves, as grounds for the imposition of sanctions. How could DeSHIRO, LANDON, and MEIGS possibly correct or withdraw any of the contentions or allegations of the sexual harassment—the stated goal and purpose of the safe harbor provision of Rule 11—if the claims alleging such had already been disposed of on motion for partial summary judgment?

A situation similar to that which is before us today arose in the U.S. District Court for the Eastern District of Pennsylvania. *See Progress Fed. Sav. Bank v. Lenders Ass'n, Inc.,* 1996 WL 57942 (E.D.Pa.1996). There, the Court was faced with a defendant who did not serve the plaintiff with a motion for sanctions until after all the claims against the defendant had either been dismissed, in a motion for partial summary judgment, or settled. *See id.* at *2. The Court proclaimed "[t]his timing is antithetical to the purposes of the twenty-one day 'safe-harbor' period. In other words, the 'safe harbor' presumes the motions timeliness. . . ." *Id.* at *3.

Additionally, the remaining two claims in the suit, Counts I and II that were not disposed of in the motion for partial summary judgment, were dismissed by this Court on May 20, 1998, upon joint stipulation of voluntarily dismissal. This voluntary dismissal removed the last two claims pending before this Court. Therefore, even if PARAMOUNT suddenly contended that its Motion for Rule 11 Sanctions was premised upon Counts I and II, which it is not, then it still must necessarily fail because such "offending" contentions or allegations were "withdrawn." Perhaps the plaintiffs discovered that proceeding to litigate on Counts I and II

might be construed as "continuing to litigate after discovering one's case is meritless," a course of behavior often proscribed as warranting sanctions.

Based upon the aforementioned reasons, PARAMOUNT's Motion for Rule 11 Sanctions must be denied. This Court does not, at this time, need to entertain a lengthy discussion and analysis over whether the *merits* of plaintiff's case constitute the type under which the imposition of sanctions is warranted. Nor does this Court need to inquire as to whether PARAMOUNT's Motion for Rule 11 Sanctions is a cleverly crafted attempt to supplant the fee-shifting provisions of Title VII. Such analyses are futile given the procedural deficiencies inherent in the method by which PARAMOUNT served and filed its motion.

## CONCLUSION

Although this Court stated it is willing to overlook one of the deficiencies in PARAMOUNT's Motion for Attorney's Fees, thereby leaving the motion to be denied on other grounds, this Court is not willing to do the same in regard to PARAMOUNT's Motion for Rule 11 Sanctions. PARAMOUNT's Motion for Rule 11 Sanctions was a clear violation of the procedural requirements imposed by Rule 11, and it ignored the underlying purpose of the "safe harbor" provision. The failure of PARAMOUNT to: (1) gain prevailing party status, which is a necessary threshold element to its successful invocation of the attorney's fees provision of Title VII, and (2) to comply with the procedural safe harbor provisions of Rule 11, prevented this Court from inquiring as to whether DeSHIRO, LANDON, and MEIGS's claims were founded in frivolity, unreasonableness, or were altogether meritless. Accordingly, it is

***ORDERED*** that Defendant's Amended Motion for Order Awarding Attorney's Fees (Docket No. 113) and Defendant's Motion for Rule 11 Sanctions (Docket No. 114) be ***DENIED***.